

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-26-00287-CV

_____

THE LEDBETTER FAMILY FOUNDATION, Appellant

V.

LONNIE K. LEDBETTER, III AND KENDALL LEDBETTER HOHMANN, Appellees

_____

On Appeal from the County Court at Law
Hood County, Texas
Trial Court No. P10686

_____

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Petitioner, The Ledbetter Family Foundation (the Foundation), filed a petition seeking permission to appeal an interlocutory order denying its plea to the jurisdiction. For the reasons set forth below, we deny the petition.

## II. BACKGROUND[1]

### A. Creation of the Foundation and Various Trusts

Lonnie Ledbetter was a wealthy businessman. He had two children—Lonnie "Trace" Ledbetter III and Kendall Ledbetter Hohmann (collectively, the Children)—with his first wife, Sharon. In or around 1979, he married his second wife, Saundra, and their marriage lasted for approximately forty-four years.

While they were married, Lonnie[2] and Saundra created the Foundation as a nonprofit corporation for charitable, scientific, literary, and educational purposes. It

---

[1]We have set forth the facts giving rise to the underlying litigation in two prior opinions. *See generally Est. of Ledbetter*, No. 02-25-00326-CV, 2026 WL 318430 (Tex. App.—Fort Worth Feb. 5, 2026, no pet.) (mem. op.); *Est. of Ledbetter*, No. 02-25-00263-CV, 2025 WL 3559022 (Tex. App.—Fort Worth Dec. 11, 2025, no pet.) (mem. op.). Therefore, we borrow many of the pertinent facts from them, adding or omitting details where appropriate. *Cf. Lumsden v. State*, No. 02-23-00195-CR, 2024 WL 853354, at *1 (Tex. App.—Fort Worth Feb. 29, 2024, pet. ref'd) (mem. op., not designated for publication) (borrowing relevant facts from prior opinions in the same criminal proceeding).

[2]To avoid confusion, we refer to the members of the Ledbetter family by their first names. *See In re Goodman*, No. 02-26-00061-CV, 2026 WL 547521, at *1 n.1 (Tex. App.—Fort Worth Feb. 26, 2026, orig. proceeding) (mem. op.).

has no members and is governed by a board of directors. The original board consisted of Lonnie, Saundra, and the Children, with Lonnie and Saundra serving as "electing" directors. As electing directors, Lonnie and Saundra were granted lifetime tenure on the board and held significant authority regarding the appointment and removal of the other directors, who served one-year terms. In this regard, the Foundation's bylaws specifically provide as follows:

> At each annual meeting of the Board of Directors . . . , the Electing Director . . . shall appoint the remaining director or directors . . . for the succeeding year by appointing Trace Ledbetter and Kendall Ledbetter or by appointing one or more other individuals as the Electing Director may duly appoint. . . . Unless specified otherwise or a director resigns, dies, becomes incapacitated[,] or is removed in accordance with the provisions of these Bylaws or the Ce[r]tificate of Formation of the Corporation, each director shall hold office for a term of one (1) year and until such time as the director's successor shall have been duly elected and qualified as provided in these Bylaws, or until such director's earlier death, resignation, retirement, removal or disqualification from office. Each director may serve an unlimited number of terms.

During their marriage, Lonnie and Saundra also established various trusts (collectively, the Trusts). Their estate plan provided that, upon the death of the surviving grantor, a portion of the Trusts' assets would be distributed to the Foundation and the remainder would be distributed to certain other, preexisting trusts for the Children's benefit.

## B. Saundra's Death, Lonnie's Remarriage, and Disputed Corporate Actions

In March 2023, Saundra died. Shortly thereafter, Lonnie—who was then 81 years old and enduring the lingering effects of throat cancer—met and married

Tawni Jones-Ledbetter. Lonnie died just 16 months after marrying Tawni. But during that time, things changed. Lonnie allowed Tawni to control his finances; he gave her millions of dollars in cash and real property interests; he grew estranged from the Children; he made uncharacteristic business decisions and extravagant purchases; and he signed new wills and trust documents that, among other things, disinherited the Children and appointed Tawni as successor trustee. *Est. of Ledbetter*, 2026 WL 318430, at \*1.

In June 2024, the Foundation purportedly amended its bylaws to name Tawni as an electing director and to provide that she would become the sole electing director when Lonnie ceased to serve on the board.[3] In December 2024, Lonnie purportedly appointed Tawni and her son Spencer R. Jones-Lanningham as the directors for 2025.[4]

However, the Children—who incontrovertibly served on the board from the Foundation's inception through at least December 31, 2024—dispute the validity of both the bylaws' amendment and the appointment of the new directors for the year 2025. Amending the Foundation's bylaws requires a two-thirds vote of all directors, and the Children—who themselves comprised two thirds of the Foundation's

---

[3]The amended bylaws were signed by Lonnie as president and by Tawni as secretary.

[4]Lonnie purportedly later appointed Collin Zimmerle, Nicholas Hannah, and Brandon Giannotti as additional directors.

directors after Saundra's death—both deny that they voted for the purported June 2024 amendment. Further, the Children deny that they received notice of the Foundation's 2024 annual meeting—or of any other meeting to consider the removal of any director—or that they gave their written consent for the board to take any action without a meeting.[5] Because the bylaws provide that (1) new directors shall be appointed at the annual meeting and (2) a director "shall hold office . . . until such time as the director's successor shall have been duly elected and qualified," the Children maintain that they remain active members of the Foundation's board.

## C. Procedural History

Lonnie died in April 2025. Shortly thereafter, the Children filed suit to challenge his new wills and trust documents, and they sought temporary orders to prevent Tawni from squandering Lonnie's assets while the suit was pending. *Id.*

In May 2025, the trial court granted the Children a temporary injunction against Tawni. Although the injunction did not expressly apply to the Foundation or its bank account, the bank nevertheless froze its account. Because this created a risk that the Foundation could be subject to significant tax penalties for failing to make its required

---

[5]The document purporting to name the Foundation's directors for the year 2025 reflects that the action was approved by unanimous written consent in lieu of a meeting and was signed by Lonnie, Tawni, and Jones-Lanningham. It does not contain the Children's signatures even though it is dated December 31, 2024, when they were undisputedly still on the board.

minimum distributions, it intervened in the lawsuit for the limited purpose of clarifying the temporary injunction and restoring access to its bank account.

After the Foundation intervened, the Children amended their pleadings to add it as a defendant. Specifically, they allege that Lonnie lacked the capacity to amend the Foundation's bylaws and to remove them as directors or that Tawni unduly influenced or defrauded him into taking these actions. Among other things, they seek declarations that they are still Foundation directors and that Tawni, her children, and her associates are not valid directors.

The Foundation filed a plea to the jurisdiction in which it argued that the Children lacked standing to pursue their claims against it because they were no longer directors when the suit was filed. The Children filed a response, and the Foundation filed a reply. In January 2026, the trial court issued a letter ruling instructing the Children to submit an order denying the Foundation's plea to the jurisdiction and indicating that it would grant the Foundation permission to pursue an interlocutory appeal.[6] In April 2026, the trial court signed an order in accordance with its letter ruling. This proceeding followed.

---

[6]Following the letter ruling, the Children filed a motion for reconsideration in which they sought clarification on certain discovery-related issues and argued that a permissive interlocutory appeal was not appropriate. After considering the motion and the Foundation's response, the trial court issued a revised letter ruling clarifying that the parties could proceed with discovery while the interlocutory appeal was pending.

6

## III. DISCUSSION

### A. Applicable Law

Our authority to consider a permissive appeal is governed by Texas Rule of Civil Procedure 168, Texas Civil Practice and Remedies Code Section 51.014, and Texas Rule of Appellate Procedure 28.3. The first step the petitioner must satisfy is obtaining the trial court's permission to appeal. Tex. Civ. Prac. & Rem. Code § 51.014(d); Tex. R. Civ. P. 168. If the trial court grants permission to appeal, then it must certify its permission in an order that "identif[ies] the controlling question of law as to which there is a substantial ground for difference of opinion" and "state[s] why an immediate appeal may materially advance the ultimate termination of the litigation." Tex. Civ. Prac. & Rem. Code § 51.014(d); Tex. R. Civ. P. 168.

If the trial court signs an order that satisfies the requirements of Rule 168 and Section 51.014(d), then the party seeking to appeal must ask us for permission. Tex. Civ. Prac. & Rem. Code § 51.014(f); Tex. R. App. P. 28.3(a). The permissive-appeal petition must "argue clearly and concisely why the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion and how an immediate appeal from the order may materially advance the ultimate termination of the litigation." Tex. R. App. P. 28.3(e)(4).

An appellate court's decision to accept or deny a properly certified permissive appeal is discretionary. *See Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 731–32 (Tex. 2019); *see also* Tex. Civ. Prac. & Rem. Code § 51.014(f) (providing

7

that court of appeals "*may* accept an appeal permitted by [Section 51.014(d)]" if appealing party files petition showing why immediate appeal is warranted (emphasis added)); *Ochoa v. Avila*, No. 08-23-00051-CV, 2023 WL 1991579, at *1 (Tex. App.—El Paso Feb. 14, 2023, no pet.) (mem. op.). Several years ago, a plurality of the Texas Supreme Court held that intermediate appellate courts have discretion to reject a permissive appeal "even when the requirements [of Section 51.014(d)] are met." *Indus. Specialists, LLC v. Blanchard Refin. Co.*, 652 S.W.3d 11, 21 (Tex. 2022) (plurality op.). Two concurring justices agreed with the plurality in *Industrial Specialists* but wrote separately to explain that they would have held that the intermediate appellate courts have absolute discretion to deny a permissive appeal. *Id.* at 21–23 (Blacklock, J., joined by Bland, J., concurring); *see Sabre Travel*, 567 S.W.3d at 732.

A court of appeals that denies a permissive-appeal petition must explain why. Tex. Civ. Prac. & Rem. Code § 51.014(g); Tex. R. App. P. 28.3(l).

## B. Analysis

In its petition, the Foundation argues—as it must—that the trial court's order denying its plea to the jurisdiction involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order will materially advance the ultimate termination of the litigation. For the reasons set forth below, we disagree.

As an initial matter, the trial court's order fails to satisfy Rule 168's strict requirements. *See* Tex. R. Civ. P. 168. "It is well-settled that to invoke this court's

8

permissive-appeal jurisdiction, 'the trial court must make a substantive ruling on the controlling legal issue being appealed so that the legal issue presented to this court is the same legal issue determined by the trial court.'" *Ewing v. Colia*, No. 02-18-00315-CV, 2018 WL 5289380, at *1 (Tex. App.—Fort Worth Oct. 25, 2018, no pet.) (mem. op.) (quoting *Eagle Gun Range, Inc. v. Bancalari*, 495 S.W.3d 887, 889 (Tex. App.—Fort Worth 2016, no pet.)). But, here, the trial court's order merely identifies a controlling question of law—"whether a director of a nonprofit corporation like the Foundation that was removed, or purportedly removed, has standing to challenge the validity of the director's removal and other actions taken by the nonprofit"—without answering it in any meaningful way. The Foundation asserts that the order effectively answers the question by denying its plea to the jurisdiction, but an order that merely denies relief without specifying the basis for the trial court's ruling is generally insufficient under Rule 168. *See Est. of Ward*, No. 02-24-00330-CV, 2024 WL 3948018, at *2 (Tex. App.—Fort Worth Aug. 27, 2024, no pet.) (mem. op.); *Ewing*, 2018 WL 5289380, at *1; *Eagle Gun Range, Inc.*, 495 S.W.3d at 889. This is particularly true when—as here—the nonmoving party presented multiple arguments for denying the requested relief.[7] *See AccessDirect-A Preferred Provider Network, Inc. v. RCG E. Tex. LLP*, No. 12-

---

[7]In their response to the Foundation's plea to the jurisdiction, the Children argued that the plea should be denied because (1) they asserted direct—not derivative—claims; (2) they were current—not former—directors since the purported selection of their replacements for the year 2025 was invalid; and (3) numerous unresolved fact issues precluded relief. Given these arguments, the trial court could have denied the jurisdictional plea based on a variety of different conclusions.

24-00056-CV, 2024 WL 2337632, at *4, *8 (Tex. App.—Tyler May 22, 2024, no pet.) (mem. op.) (rejecting petitioners' argument that "the substance of the trial court's rulings" on the controlling legal questions identified in the order denying their jurisdictional pleas was "clear from the face of the record" because given the arguments raised by the parties, the trial court could have based its ruling on a number of possible findings and conclusions); *JETX Energy, LLC v. Lonestar Operating, LLC*, No. 10-23-00073-CV, 2023 WL 3346572, at *1–2 (Tex. App.—Waco May 10, 2023, no pet.) (mem. op.) (denying petition for permissive appeal because an examination of the arguments raised in the record revealed that the trial court could have granted partial summary judgment based on one or more conclusions of law). Because the trial court's order does not satisfy the requirements of Rule 168, the Foundation's petition "does not meet the strict jurisdictional requirements" for a permissive appeal. *See Est. of Ward*, 2024 WL 3948018, at *2 (quoting *Ewing*, 2018 WL 5289380, at *1).

But even if we were to assume that the trial court's order satisfied Rule 168, we would nevertheless deny the Foundation's petition because the supposed "controlling question of law" is not actually a purely legal issue and instead depends on unresolved factual disputes. *See Est. of Ward*, 2024 WL 3948018, at *3 ("A controlling issue of law that will support a permissive appeal 'needs to be solely a question of law unconstrained by procedural or factual issues.'" (quoting *El Paso Tool & Die Co., Inc. v. Mendez*, 593 S.W.3d 800, 805 (Tex. App.—El Paso 2019, no pet.)).

10

The Foundation frames the underlying legal question as "whether Texas law confers standing merely because a former director of a non[]profit, non[]religious organization alleges that his removal or other corporate actions were improper." But this question is predicated on the assumption that the Children are, in fact, *former* directors—i.e., that the appointment of the new directors for the year 2025 was valid. However, the validity of this appointment is far from settled; indeed, it is one of the central factual disputes between the parties. Thus, we cannot even reach—much less answer—the supposed controlling legal question until the antecedent factual dispute concerning the 2025 directors' appointment is resolved. Because the legal question presented depends on the resolution of an unresolved factual issue, it cannot support a permissive appeal. *See id.*; *see also Hartline Barger LLP v. Denson Walker Props., LLC*, No. 05-23-00126-CV, 2023 WL 8540006, at *1 (Tex. App.—Dallas Dec. 11, 2023, no pet.) (mem. op.) (denying petition for permissive appeal because the determination of the controlling legal issues was "constrained by the facts"); *In re Est. of Fisher*, 421 S.W.3d 682, 684–85 (Tex. App.—Texarkana 2014, no pet.) (dismissing permissive appeal from partial no-evidence summary judgment because "[w]hether undue influence was exerted is an ultimate question of fact for the fact-finder" and thus the "appeal involve[d] a controlling fact issue, not a legal one"); *Diamond Prods. Int'l, Inc. v. Handsel*, 142 S.W.3d 491, 494 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("[Section 51.014 of the Texas Civil Practice and Remedies Code] does not contemplate permissive appeals . . . where the facts are in dispute.").

11

Further, it is unclear that an immediate appeal will materially advance the termination of the litigation. *See* Tex. Civ. Prac. & Rem. Code § 51.014(d)(2). The Children have asserted claims against numerous parties besides the Foundation. And it does not appear that the resolution of the legal question that the Foundation seeks to appeal would have any bearing on these other claims. Thus, even if the Foundation's plea to the jurisdiction were granted, the litigation—including the Children's will contest, trust claims, and undue-influence claims against Tawni— would continue. *See Wholesale, Inc. v. Hous. Specialty Ins. Co.*, No. 01-23-00867-CV, 2024 WL 234745, at *2 (Tex. App.—Houston [1st Dist.] Jan. 23, 2024, no pet.) (mem. op.) ("[W]hen other issues are left pending in the litigation, ultimate termination of the litigation is not advanced by allowing immediate appeal of an otherwise interlocutory order." (quoting *Est. of Barton*, No. 06-21-00009-CV, 2021 WL 1031540, at *5 (Tex. App.—Texarkana Mar. 18, 2021, no pet.) (mem. op.))); *see also Armour Pipe Line Co. v. Sandel Energy, Inc.*, No. 14-16-00010-CV, 2016 WL 514229, at *3 (Tex. App.—Houston [14th Dist.] Feb. 9, 2016, no pet.) (mem. op.) (holding that trial court's order failed to show that an immediate appeal would materially advance the litigation's termination "because it d[id] not identify what claims and issues remain[ed] to be decided in the litigation" so that the appellate court could "evaluate whether the remaining disputes and issues [we]re substantial and dependent on the questions of law that appellants s[ought] to appeal").

## IV. CONCLUSION

In sum, because the Foundation has not shown that the order it seeks to appeal involves a controlling question of law on which a substantial ground for difference of opinion exists and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, we deny the petition.[8] *See* Tex. Civ. Prac. & Rem. Code § 51.014(d); Tex. R. App. P. 28.3(e)(4), (l); *see also* Tex. R. Civ. P. 168.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  June 26, 2026

---

[8]After the Children pointed out that the Foundation's petition exceeded the applicable word limit by approximately 1,500 words, the Foundation filed a motion for leave to exceed the length limitations.  *See* Tex. R. App. P. 9.4(i)(2)(D)–(E), 28.3(g).  Although we expect parties practicing before this court to comply with the applicable procedural rules and, when necessary, to promptly seek leave to exceed any applicable word limits before opposing counsel raises the issue, we hereby grant the motion.